# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHANNA ROBERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-09-388-D |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability insurance benefits and supplemental security income benefits. Pursuant to an order entered by United States District Judge Timothy D. DeGiusti, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. ___). Both parties have briefed their respective positions and thus the matter is at issue. For the reasons stated herein, it is recommended that the decision of the Commissioner be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for disability insurance benefits and supplemental

security income benefits on April 15, 2003,[1] with a protective filing date of April 7, 2003, alleging an inability to work since December 16, 2002, as a result of diabetes, high blood pressure, sarcoidosis, and vision problems.[2] Tr. 115, 116-18, 539-40, 645. The applications were denied on initial consideration and on reconsideration at the administrative level. Tr. 47, 48, 108-10, 112-14, 541, 542-43, 544, 545-46. Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on June 28, 2005. Tr. 107, 604-32. Plaintiff appeared in person with her attorney and offered testimony in support of her applications. Tr. 606, 608-27. A vocational expert also testified at the request of the administrative law judge. Tr. 101, 627-31. The administrative law judge issued her decision on November 23, 2005, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that she was not entitled to benefits. Tr. 49-51, 52-57. The Appeals Council granted Plaintiff's request for review and remanded the case to the administrative law judge on August 11, 2006. Tr. 64, 65-66. The administrative law judge conducted a second hearing on September 11, 2007. Tr. 639-78. Plaintiff appeared in person with her attorney and offered testimony in support of her applications. Tr. 641, 645-68. Plaintiff's daughter also testified at the hearing. Tr. 668-71. Additionally, a vocational expert testified at the request

---

[1]Plaintiff filed subsequent applications for disability insurance benefits and supplemental social security income benefits on February 2, 2006, but did not appeal denial of those applications. Tr. 142-44, 547-59, 641-42.

[2]Plaintiff originally alleged that she could not work as a result of high blood pressure alone, but at the hearing pursuant to the Appeals Council's remand order, Plaintiff alleged the above impairments kept her from working. Tr. 152, 645.

of the administrative law judge.  Tr. 69, 672-77.  The administrative law judged issued her decision on April 18, 2008, finding again that Plaintiff was not disabled within the meaning of the Social Security Act and that she was not entitled to benefits.  Tr. 25-27, 28-42.  The Appeals Council denied Plaintiff's request for review on February 11, 2009, and thus, the decision of the administrative law judge became the final decision of the Commissioner.  Tr. 9-11.

## II.  DECISION OF THE ADMINISTRATIVE LAW JUDGE

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Tr. 29-30.  She first determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December 16, 2002.  Tr. 31.  At steps two and three, the administrative law judge determined that Plaintiff suffers from sarcoidosis, asthma, reactive airway disease, steroid induced diabetes, and high blood pressure, all of which are severe, but not severe enough to meet or equal the criteria of any listed impairment or combination of impairments.  Tr. 31-36.  The administrative law judge next determined that Plaintiff has the residual functional capacity (RFC) to perform a limited range of sedentary work.  Tr. 36.  Specifically, the administrative law judge found that Plaintiff can occasionally climb, balance, kneel, stoop, crawl, and crouch; must avoid concentrated exposure to dust, fumes, odors, and gasses, including cigarette smoke; and must work in a controlled environment avoiding exposure to extreme cold and heat.  Tr. 36.  Based on this RFC and the testimony of the vocational expert, the administrative law judge determined at step four that Plaintiff

cannot perform her past relevant work of nurse's aid.  Tr. 40.  However, based on the

Medical-Vocational guidelines and the testimony of the vocational expert, the administrative

law judge found that a person with Plaintiff's vocational factors and RFC could perform

other work that exists in significant numbers in the economy, such as appointment clerk and

front desk receptionist.  Tr. 40-41.  Accordingly, the administrative law judge found Plaintiff

not disabled and not entitled to benefits.  Tr. 41-42.

## III.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review

as follows:

> [W]e[3] independently determine whether the [administrative law judge's]
> decision is free from legal error and supported by substantial evidence.
> Although we will not reweigh the evidence or retry the case, we meticulously
> examine the record as a whole, including anything that may undercut or detract
> from the [administrative law judge's] findings in order to determine if the
> substantiality test has been met.
>
> Substantial evidence is such relevant evidence as a reasonable mind
> might accept as adequate to support a conclusion.  It requires more than a
> scintilla, but less than a preponderance.  Our determination of whether the
> [administrative law judge's] ruling is supported by substantial evidence must
> be based upon the record taken as a whole.  Consequently, we remain mindful
> that evidence is not substantial if it is overwhelmed by other evidence in the
> record.

---

[3]Although the Tenth Circuit Court of Appeals was discussing its own standard of
review, the same standard applies to the federal district court's appellate review of social
security cases.  Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495, 1502 n.1
(10th Cir. 1992) (Kane, J., concurring) ("[A]s the second-tier appellate court, a circuit court
does apply the same standard of review as the district court–the standard applicable to
appellate review of individual social security cases.").

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations and internal quotation marks and brackets omitted). To determine whether a claimant is disabled, the Commissioner employs a five step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; Wall, 561 F.3d at 1052. The claimant bears the burden to establish a prima facie case of disability at steps one through four. Williams v. Bowen, 844 F.2d 748, 751 & n.2 (10th Cir. 1988). If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy given the claimant's age, education , and work experience. Williams, 844 F.2d at 751.

## IV. DISCUSSION

Plaintiff raises four issues on appeal: (1) the administrative law judge erred in finding Plaintiff's severe impairments did not meet or equal the impairments listed in the regulatory appendix, (2) the administrative law judge failed to adequately discuss the opinion of Plaintiff's treating physician and the weight she assigned to that opinion, (3) the administrative law judge did not properly evaluate Plaintiff's credibility, and (4) the administrative law judge did not properly assess Plaintiff's RFC. Plaintiff's Opening Brief, 13-15, 15-19, 19-23, 23-25.

### A. STEP THREE ANALYSIS

Plaintiff argues that the administrative law judge erred in evaluating her physical impairments under Listing § 3.02. Plaintiff's Opening Brief, 13. Specifically, Plaintiff alleges that the results of pulmonary function tests she performed during 2003, 2004, and

2005 show that she meets the listing requirements for chronic pulmonary insufficiency. Plaintiff's Opening Brief, 13-14. Plaintiff also contends that the administrative law judge failed to discuss the pulmonary function tests which show that the listing requirements were met, and instead "henpecked the medical record to try to support her decision." Plaintiff's Opening Brief, 14-15. Finally, Plaintiff asserts that any finding by this Court that she did not meet the durational requirement contained in the listings "would be [an] improper post-hoc justification." Plaintiff's Opening Brief, 15.

The Commissioner responds that the administrative law judge explicitly stated that Plaintiff must meet the durational requirement to be found disabled under the listings and that Plaintiff failed to prove that she met that requirement. Commissioner's Brief, 18-19. The Commissioner contends that the administrative law judge considered all the relevant evidence and that Plaintiff's pulmonary functioning tests during 2003, 2004, and 2005 show that Plaintiff has not met the durational requirement. Commissioner's Brief, 19-20.

"When a claimant's disability is equal to or more severe than an impairment in the Listing of Impairments, he is per se disabled." Knipe v. Heckler, 755 F.2d 141, 146 (10th Cir. 1985); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The determination at step three is strictly a medical determination. Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990) (citing 20 C.F.R. §§ 404.1526(b), 416.926(b)); Baldwin v. Barnhart, No. 02-5117, 167 Fed. Appx. 49, 52 (10th Cir. Feb. 14, 2006).[4] To meet or equal a listing, the impairment must

_____

[4]This and any other unpublished dispositions are cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

"meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Baldwin, 167 Fed. Appx. at 52 (internal alteration omitted) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). The claimant bears the "step three burden to present evidence establishing her impairments meet or equal listed impairments." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).

Here, the administrative law judge found at step two that in early September 2003, prior to treatment with the prescription steroid prednisone, Plaintiff's one-second forced expiratory volume was 0.95 and her forced vital capacity was 1.27 but that nearly two weeks after beginning treatment, her one-second forced expiratory volume was 1.36 and her forced vital capacity was 1.94. Tr. 32. The administrative law judge then documented Plaintiff's one-second forced expiratory volume and forced vital capacity levels during 2004, 2005, and 2006, which showed that while these levels fluctuated, they never dropped below 1.73 for her one-second forced expiratory volume and 2.22 for her forced vital capacity. Tr. 32, 33, 34. Accordingly, at step three, the administrative law judge found that Plaintiff's pulmonary function studies show that her sarcoidosis did not approach the requirements for Listing § 3.02 for chronic pulmonary insufficiency. Tr. 34. The undersigned finds that this determination was supported by substantial evidence.

Plaintiff is sixty-seven inches tall. See, e.g., Tr. 254. Therefore, Plaintiff can only be found disabled under Listing § 3.02 if she can show the following:

> A. Chronic obstructive pulmonary disease, due to any cause with the [one-second forced expiratory volume] equal to or less than [1.35] . . .; [or]

B. Chronic restrictive ventilatory disease, due to any cause, with the [forced vital capacity] equal to or less than [1.55] . . .; [or]

C. Chronic impairment of gas exchange due to clinically documented pulmonary disease. With:

1. Single breath [diffusing capacity of the lungs for carbon monoxide] . . . less than 10.5 ml/min/mm Hg or less than 40 percent of the predicted normal value. . . .

20 C.F.R. pt. 404, subpt. P, App. 1, § 3.02(A)-(C)(1) (tables and emphasis omitted).[5] Further, as the administrative law judge correctly noted, any finding of disability requires that the impairment last or be expected to last at least twelve months. Tr. 29; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

In support of her argument that she meets the requirements of Listing § 3.02, Plaintiff cites to three pulmonary function tests from 2003, 2004, and 2005 respectively. Plaintiff's Opening Brief, 13-14. However, when viewed as a whole, the record shows that Plaintiff did not show that her alleged impairment lasted or could be expected to last twelve months or longer. On July 15, 2003, Plaintiff's one-second forced expiratory volume was 1.36, and her forced vital capacity was 1.94 prior to bronchodilators and 1.43 and 2.21, respectively post-bronchodilators. Tr. 225. On September 5, 2003, her one-second forced expiratory volume was 0.95 pre-bronchodilators and 1.19 post, her forced vital capacity was 1.27 pre-bronchodilators and 1.33 post, and her diffusing capacity of the lungs for carbon monoxide was 6.8. Tr. 347, 349, 469. On March 3, 2004, Plaintiff's one-second forced expiratory

---

[5]Plaintiff does not allege that she meets the requirements of listing § 3.02(C)(2)-(3). Thus, those subparagraphs will not be discussed.

volume was 1.96 pre-bronchodilators and 2.15 post and her forced vital capacity was 2.49 pre-bronchodilators and 2.66 post (her diffusing capacity of the lungs for carbon monoxide was not tested). Tr. 330, 332, 467, 489. On June 2, 2004, Plaintiff's one-second forced expiratory volume was 2.02 and her forced vital capacity was 2.56 (her diffusing capacity of the lungs for carbon monoxide was not tested nor were any measurements taken post-bronchodilators). Tr. 317, 319, 465. On November 2, 2004, her one-second forced expiratory volume was 1.76 pre-bronchodilators and 1.80 post, her forced vital capacity was 2.22 pre-bronchodilators and 2.34 post, and her diffusing capacity of the lungs for carbon monoxide was 10.1. Tr. 463. On April 11, 2006, Plaintiff's one-second forced expiratory volume was 1.80 pre-bronchodilators and 1.95 post, her forced vital capacity was 2.33 pre-bronchodilators and 2.75 post, and her diffusing capacity of the lungs for carbon monoxide was 12.0. Tr. 475, 492. Finally, on November 7, 2006, her one-second forced expiratory volume was 1.73 and her forced vital capacity was 2.34 (her diffusing capacity of the lungs for carbon monoxide was not tested nor were any measurements taken post-bronchodilators). Tr. 493.

These results show that the only time Plaintiff's one-second forced expiratory volume and forced vital capacity levels were of the required value was on September 5, 2003, far short of the twelve month durational requirement. Further, while Plaintiff's levels for diffusing capacity of the lungs for carbon monoxide were of the required value on September 5, 2003, and November 2, 2004, Plaintiff's diffusing capacity of the lungs for carbon monoxide was not tested between those dates. This is significant because on September 3,

9

2003, Plaintiff began treatment with prednisone which, as shown in the pulmonary function test results and clinical notes, improved her functioning. Tr. 310, 316, 319, 328, 332, 335, 338, 345, 354, 465, 467, 489. Then, in July 2004, Plaintiff discontinued prednisone, but due to a decline in functioning, she restarted prednisone treatment in early November 2004 and by mid-November she showed improved functioning. Tr. 292, 308, 316, 435, 463. Thus, while the pulmonary function tests on September 5, 2003, and November 2, 2004, indicate that Plaintiff's diffusing capacity of the lungs for carbon monoxide values met the requirements for Listing § 3.02(C), these values were obtained while Plaintiff was experiencing a decline in function due to discontinuation of prednisone treatment, and no diffusing capacity of the lungs for carbon monoxide values were obtained while Plaintiff was experiencing improved functioning due to prednisone treatment. Without this information, Plaintiff cannot show that her alleged impairment lasted or could be expected to last longer than twelve months, especially when she showed improved functioning during that twelve month period. See Tucker v. Barnhart, No. 05-5118, 201 Fed. Appx. 617, 620 (10th Cir. Oct. 19, 2006) ("[W]hile [the claimant] provides record cites for her back impairments, cardiac testing, and hypertension, she does not establish that she satisfies all of the requirements of Listings 1.04, 4.02, or 4.03."). Accordingly, the undersigned finds that the administrative law judge's finding that Plaintiff did not meet Listing § 3.02 is supported by substantial evidence.

## B. TREATING PHYSICIAN'S OPINION

Plaintiff alleges that in assigning slight weight to the pulmonary residual functional

capacity questionnaire of Dr. Joe Zein, Plaintiff's pulmonologist from July 2003 to October 2005, the administrative law judge failed to follow the treating source rule. Plaintiff's Opening Brief, 16, 17. Specifically, Plaintiff contends that the administrative law judge used "boiler plate language" and insufficient reasons for assigning Dr. Zein's opinion less weight. Plaintiff's Opening Brief, 16-17. Plaintiff further argues that the administrative law judge failed to detail the evidence that contradicted Dr. Zein's findings and that the evidence in fact supported his findings. Plaintiff's Opening Brief, 17-19. The Commissioner argues that the administrative law judge properly assigned Dr. Zein's opinion less weight because the medical evidence of record and Dr. Zein's own treatment notes disagreed with his pulmonary residual functional capacity questionnaire. Commissioner's Brief, 21-23.

Treating source medical opinions are entitled to deference and must be either given controlling weight or assigned some lesser weight "using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927." Social Security Regulation 96-2p, 1996 WL 374188, at *4. To ensure that the opinion of a treating physician receives proper deference, an administrative law judge must engage in a sequential analysis when performing her review of such opinions. See Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

First, the administrative law judge must determine whether the opinion deserves controlling weight. Watkins, 350 F.3d at 1300. Controlling weight should be given if the opinion is both well supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Watkins, 350 F.3d at 1300.

If the medical opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §[§] 404.1527 and 416.927." Watkins, 350 F.3d at 1300. Further, the administrative law judge must give good reasons in the decision for the weight she ultimately assigns to the opinion. Watkins, 350 F.3d at 1301. As summarized in Watkins, the regulatory factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the [administrative law judge's] attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301. Although the decision need not include explicit discussion of each factor, the record must reflect the weight the administrative law judge gives to the opinion and the reasons for that weight. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007). The decision must articulate the administrative law judge's reasoning such that later reviewers can identify both the weight that was actually assigned to the opinion and the reasons for that weight. Social Security Regulation 96-2p, 1996 WL 374188, at *5. "Finally, if the [administrative law judge] rejects the opinion completely, [s]he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (internal quotation marks omitted).

Here, the administrative law judge began by discussing Dr. Zein's opinions regarding Plaintiff's limited functionality as set out in his pulmonary functional capacity questionnaire

dated December 8, 2004.  Tr. 39.  The administrative law judge then found that Dr. Zein is no longer a treating physician and that "[h]is conclusions regarding the claimant's exertional restrictions and mental limitations are not supported by test results, laboratory fact or findings."  Tr. 39.  The administrative law judge found Dr. Zein's opinions were inconsistent with the opinion of Dr. Walid Younis, Plaintiff's current pulmonologist, that Plaintiff responded favorably to prednisone and was feeling better.  Tr. 39.  The administrative law judge also noted that during the consultative examination, Plaintiff stated that she could sit.  Tr. 39.  For these reasons, the administrative law judge assigned Dr. Zein's opinion "slight weight."  Tr. 39.

The undersigned finds that the opinion by the administrative law judge reflects the weight that was actually assigned to Dr. Zein's opinion and she sets forth the reasons for that weight.  In the pulmonary residual functional capacity questionnaire dated December 8, 2004, Dr. Zein opined that Plaintiff could sit about four hours in an eight hour day and could stand or walk less than two hours in an eight hour day.  Tr. 437.  Dr. Zein also stated that Plaintiff will need to take a fifteen minute break at least once every hour and that Plaintiff can only occasionally lift less than ten pounds and never anything heavier.  Tr. 437.  Finally, Dr. Zein found that Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, perfumes, and soldering fluxes; must avoid even moderate exposure to extreme cold, extreme heat, high humidity, solvents and cleaners, and chemicals; and must avoid all exposure to cigarette smoke.  Tr. 437-38.

However, the medical evidence of record does not support Dr. Zein's opinions.  On

13

November 12, 2004, prior to completion of the pulmonary residual functional capacity questionnaire, Plaintiff reported that she was doing well, and Dr. Zein noted that her sarcoidosis was "clinically stable." Tr. 292. In an progress note authored by Dr. Zein on the same day that he completed the pulmonary residual functional capacity questionnaire, he stated that Plaintiff felt "better with better exercise tolerance" after her sarcoidosis relapsed following discontinuation of prednisone treatment. Tr. 462. In another note dated April 20, 2005, Plaintiff stated that she felt "much better" with "improved [shortness of breath]" and "improved exercise tolerance." Tr. 456. Treatment notes with Dr. Younis also indicate that Plaintiff's sarcoidosis has improved with prednisone treatment. Tr. 511, 514, 522. One note specifically states that Plaintiff stopped prednisone treatment for one year but restarted after she started to develop various symptoms and that her return to prednisone improved her symptoms. Tr. 514. Even in completing the pulmonary residual functional capacity questionnaire, Dr. Zein acknowledges that prednisone improves Plaintiff's condition. Tr. 436. Thus, the administrative law judge acted appropriately in according less weight to Dr. Zein's pulmonary residual functional capacity questionnaire. See Sherman v. Barnhart, No. 05-7120, 192 Fed. Appx. 801, 804 (10th Cir. Aug. 23, 2006) ("Because [the treating physician's] opinion was not well-supported and was not consistent with the other medical evidence, we conclude the [administrative law judge] correctly did not give [the treating physician's] opinion controlling weight.").

## C. CREDIBILITY ANALYSIS

Plaintiff contends that the administrative law judge failed to properly evaluate her

credibility.  Plaintiff's Opening Brief, 19.  Specifically, Plaintiff claims that the administrative law judge failed to weigh the requisite factors and to link her findings to the substantial evidence of record.  Plaintiff's Opening Brief, 20.  Plaintiff claims that the administrative law judge's finding that her sarcoidosis was well treated with prednisone was improper because the record shows that she continued to complain of shortness of breath and fatigue even while taking prednisone.  Plaintiff's Opening Brief, 21-22.  Further, Plaintiff argues that her use of a nebulizer at home was given slight weight and Dr. Zein's and Dr. Younis's treatment notes "clearly documented" her ongoing complaints of sarcoidosis. Plaintiff's Opening Brief, 22.

The Commissioner responds that Plaintiff's complaints are inconsistent with the record as a whole.  Commissioner's Brief, 23.  The Commissioner contends that the administrative law judge cited and discussed the appropriate factors in assessing Plaintiff's credibility and that she properly considered the inconsistencies between Plaintiff's complaints and the medical evidence.  Commissioner's Brief, 24.  The Commissioner also alleges that the administrative law judge properly found that medication controlled Plaintiff's sarcoidosis, appropriately considered any aggravating factors, and discussed Plaintiff's daily activities.  Commissioner's Brief, 25-26.  Thus, the Commissioner claims that the administrative law judge adequately considered the requisite factors and explained why those factors led her to find Plaintiff less credible.  Commissioner's Brief, 26-27.

The standard for evaluating the effects of symptoms of pain, fatigue, shortness of breath, weakness, or nervousness on a claimant's ability to work is well established.  In

accordance with <u>Luna v. Bowen</u>, 834 F.2d 161, 163-65 (10th Cir. 1987), the administrative law judge must consider (1) whether the claimant has established the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.

When the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the claimant's ability to do basic work activities. Social Security Regulation 96-7p, 1996 WL 374186, at *1. Some factors that may be considered in assessing the credibility of a claimant's statements about the effects of symptoms include (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant receives or has received for relief of pain or other symptoms; (5) treatment, other than medication, the claimant has received for relief of pain or other symptoms; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); <u>see also</u> <u>Luna</u>, 834 F.2d at 165-66; <u>Huston v. Bowen</u>, 838 F.2d 1125, 1132 (10th Cir. 1988) (listing other relevant factors

including "frequency of medical contacts, . . . subjective measures of credibility that are peculiarly within the judgment of the [administrative law judge], the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.").

Credibility determinations are peculiarly within the province of the finder of fact and should not be upset when they are supported by substantial evidence. Diaz v. Secretary of Health & Human Services, 898 F.2d 774, 777 (10th Cir. 1990). However, an administrative law judge must closely and affirmatively link her credibility findings to substantial evidence as a conclusory finding is insufficient. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). But a "formalistic factor-by-factor recitation of the evidence" is not required. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An administrative law judge's credibility analysis is sufficient so long as the decision sets forth the specific evidence relied upon in making the determination. Qualls, 206 F.3d at 1372.

Here, the administrative law judge stated that Plaintiff's disability claim was predicated on her eye problems, diabetes, high blood pressure, and pulmonary sarcoidosis, which caused her to become exhausted and suffer shortness of breath. Tr. 37. The administrative law judge then found that while Plaintiff's impairments could reasonably be expected to produce Plaintiff's alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible insofar as they were inconsistent with the administrative law judge's RFC determination. Tr. 37. In support of this finding, the administrative law judge stated that the medical records showed

that Plaintiff's high blood pressure was under control in 2002 and 2003 and Plaintiff's shortness of breath did not begin until July 2003. Tr. 37-38. The administrative law judge also considered Plaintiff's prior work history and gave it "some weight" in her determination. Tr. 38. The administrative law judge stated that while Plaintiff denied the ability to perform most activities at the hearing, the treatment notes showed that Plaintiff's condition improved with prednisone treatment and at one point, had stabilized even while off prednisone. Tr. 38. The administrative law judge also considered the type, dosage, and effectiveness of Plaintiff's medication and its side effects and noted that Plaintiff claimed she experienced no side effects from the medication. Tr. 38. The Plaintiff testified at the administrative hearing that she could hardly see, Tr. 666, but the administrative law judge called into doubt that testimony, finding that Plaintiff's best corrected vision was 20/25 in both eyes. Tr. 38. The administrative law judge considered factors that aggravated Plaintiff's symptoms, such as hot and cold weather, humidity, and fumes and included those factors within her RFC determination. Tr. 38. The administrative law judge considered Plaintiff's use of nebulizers and inhalers but assigned that use "slight weight" because it provided similar results as Plaintiff's other medical treatment. Tr. 38. The administrative law judge found that the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms were controlled by medication and that Plaintiff went an entire year without the use of prednisone to stabilize her pulmonary sarcoidosis. Tr. 38. The administrative law judge also found that while Plaintiff testified at the hearing that she completely quit smoking in 2003, the medical records reflected she had not quit. Tr. 38. Thus, the administrative law judge found that

18

while Plaintiff does experience some breathing problems, those problems are not so severe as to preclude all work activity. Tr. 39.

Plaintiff only seems to dispute the administrative law judge's findings regarding the extent to which Plaintiff's pulmonary sarcoidosis impairs her ability to perform work. Plaintiff's Opening Brief, 20-22. At the September 11, 2007, hearing, Plaintiff testified that her shortness of breath makes it difficult to do anything and causes her exhaustion. Tr. 661, 664. Specifically, Plaintiff testified that she spent most of her time lying in bed and that her pulmonary sarcoidosis prevented her from doing any chores at home. Tr. 663-66. Plaintiff also stated that her walking was limited to walking from her bedroom to her bathroom and occasionally to the mailbox on the front porch and that the furthest she could walk was to the driveway and back. Tr. 665. Plaintiff claimed that the heaviest object she lifts is a glass or a paper plate and that if it were not for her shortness of breath she would be working. Tr. 666, 668.

The medical records show that Plaintiff's condition is much less limiting than Plaintiff claims. In early 2006, Dr. Younis noted that Plaintiff reported not taking prednisone and complained of shortness of breath on exertion but found that her pulmonary function test was stable and stated that her sarcoidosis was "stable at this time." Tr. 476. In late 2006, Dr. Younis noted that Plaintiff's sarcoidosis had worsened and he restarted her on prednisone. Tr. 480. In January 2007, Plaintiff claimed she felt better, and in April 2007, Dr. Younis noted that Plaintiff was "clinically doing OK" with no shortness of breath and that she was "active." Tr. 511, 522. Further, as stated above, Plaintiff's pulmonary function tests and

prior statements by both Dr. Zein and Dr. Younis showed that Plaintiff responded favorably to prednisone. Accordingly, the undersigned finds that the administrative law judge applied the correct legal standard and her opinion showed the specific evidence upon which she relied, which finds substantial support in the record.

### D. RFC ASSESSMENT

Plaintiff claims that the administrative law judge failed to properly assess her RFC. Plaintiff's Opening Brief, 23. Specifically, Plaintiff alleges that the administrative law judge failed to take into account all of Plaintiff's exertional and non-exertional impairments as stated in the pulmonary residual functional capacity questionnaire complete by Dr. Zein. Plaintiff's Opening Brief, 24. The Commissioner responds that the administrative law judge formulated a proper RFC which was premised on the limitations supported by the record and that there is no evidence to support any additional limitations. Commissioner's Brief, 29.

In assessing a claimant's RFC, the administrative law judge must consider the limiting effects of all impairments, even those that are not severe, and make specific findings. 20 C.F.R. §§ 404.1545(e), 416.945(e). The administrative law judge must explain her findings to ensure meaningful review. The pertinent social security ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material

inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Social Security Ruling 96-8p, 1996 WL 374184, at * 7 (footnote omitted).

Here, the administrative law judge determined that Plaintiff had an RFC for less than a full range of sedentary work, stating that Plaintiff could only occasionally climb, balance kneel, stoop, crawl, and crouch; must avoid concentrated exposure to dust, fumes, odor, and gasses, including cigarette smoke; and must work in a climate controlled environment, avoiding exposure to extreme heat and cold. Tr. 36. In making this determination, the administrative law judge considered Plaintiff's subjective complaints and as stated above, found Plaintiff's allegations regarding the persistence and limiting effects of her symptoms not credible to the extent they disagreed with the RFC determination. Tr. 37. The administrative law judge also considered the pulmonary residual functional capacity questionnaire completed by Dr. Zein and, as stated above, accorded that document "slight weight." Tr. 39.

Plaintiff complains that the administrative law judge failed to take into account the restrictions Dr. Zein detailed in his pulmonary residual functional capacity questionnaire. Plaintiff's Opening Brief, 24, 25. The undersigned has already found that the administrative law judge acted appropriately in according "slight weight" to Dr. Zein's opinion. Further, the RFC determination was solely the province of the administrative law judge, and thus, she was not bound by the determinations of Dr. Zein. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); Gilbert v. Astrue, No. 06-1137, 231 Fed. Appx. 778, 783 (10th Cir. Apr. 11,

2007).  According, the undersigned finds that the administrative law judge properly explained her RFC determination and that determination was supported by substantial evidence.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of the Social Security Administration be affirmed.  The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by June 10, 2010, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

Dated this 21st day of May, 2010.


DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE